Filed 7/17/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PRIEL GRIMBERG,<br><br>    Beneficiary, Plaintiff, and<br>    Respondent,<br><br>    v.<br><br>LIBBY POUR,<br><br>    Objector and Appellant. | D085888<br><br><br><br>(Super. Ct. No. 37-2022-00043394-PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Olga Alvarez, Judge.  Dismissed.

Correia Law Firm and Deja A. Correia for Objector and Appellant.

Law Office of Kevin E. Kravets and Kevin E. Kravets for Plaintiff and Respondent.

## I.  INTRODUCTION

Objector and appellant Libby Pour temporarily served as the successor trustee to her aunt Priel Grimberg's irrevocable trust.  The guardian ad litem appointed to represent Priel's interests requested that the probate court authorize the recordation of lis pendens against Pour's real properties after the guardian ad litem determined Pour had allegedly used trust assets for her own benefit.  Pour opposed the request on the ground that the probate

case did not involve any real property claims against her as required by the lis pendens statutes.  (See Code Civ. Proc.,[1] § 405 et seq.)  The probate court granted the guardian ad litem's request and directed him to record the lis pendens against Pour's real properties.

In this direct appeal, Pour argues that "the probate court's order should be reversed" and "the lis pendens should be expunged."  Although the lis pendens statutes generally declare orders involving expungement requests nonappeable — the exclusive remedy is by petition for writ of mandate brought within 20 days of the challenged order (§ 405.39) — Pour maintains the order is appealable under more general Probate Code provisions (see Prob. Code, § 1300, subds. (a) [orders "[d]irecting, authorizing, approving, or confirming the . . . encumbrance . . . of property" are appealable], (c) [orders "[a]uthorizing, instructing, or directing a fiduciary" are appealable]).  We are not persuaded.

Because the Probate Code expressly authorizes use of the lis pendens statutes (Prob. Code, § 1004) — indeed, Pour invokes them in this appeal — those more specific statutes govern (see *Edais v. Superior Court* (2023) 87 Cal.App.5th 530, 542 (*Edais*) ["a canon of statutory construction instructs that, where statutes conflict, ' " 'more specific provisions take precedence over more general ones' " ' "]; Prob. Code, § 1000, subd. (a) ["Except to the extent that this code provides applicable rules, the rules of practice applicable to civil actions . . . apply to, and constitute the rules of practice in, proceedings under this code"]).  The challenged order is therefore not appealable.  And even if we were to exercise our discretion to treat Pour's appeal as a petition

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise indicated.

for writ of mandate, it would be untimely under the lis pendens statute's 20-day limitation period.

Accordingly, the appeal is dismissed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Trust

Effective October 10, 2017, Priel Grimberg and Jacob Grimberg executed an irrevocable living trust agreement titled, "The Cohen Family Trust" (the Trust). Priel and Jacob were the Trust's settlors, trustees, and beneficiaries. The Trust provided that, upon Priel and Jacob's deaths, their son Arie Tomer Grimberg would become the sole beneficiary. And, if while alive, Priel and Jacob became unable to serve as trustees, the Trust named Sylvia R. as their successor trustee.

The Trust's primary assets were two residential units on Clairemont Mesa Boulevard. Priel and Jacob lived in one unit (Unit 26) and earned rental income by renting out the other (Unit 27).

Jacob died in July 2020. On August 24, 2021, Priel purportedly signed an amendment to the Trust agreement (the Amendment) that designated her niece, Pour, as the Trust's successor trustee. On November 2, 2021, Priel purportedly signed a "notice of resignation of trustee" (the Resignation Notice) by which she resigned as trustee of the Trust and confirmed Pour's role as trustee.

### B. Arie's Petitions

#### 1. Validity of Trust Instruments

On October 26, 2022, Arie filed a petition in probate court seeking to determine the validity of the Amendment and the Resignation Notice. Arie

alleged that Priel lacked capacity to execute the Amendment because she was distraught upon Jacob's death and was suffering from dementia. Arie further alleged that Pour "manipulated Priel into executing the [Amendment]."

Arie's petition also included a claim for financial elder abuse against Pour and sought to impose a constructive trust over Trust assets in Pour's possession. Arie alleged that whereas "during Jacob's life, the monthly rental income from Unit #27 was used exclusively for payment of the mortgages on Unit #26 and Unit #27, and any remaining money was saved," after Pour became Trustee she diverted the rental income from Unit 27, and Unit 26 fell into foreclosure. Arie further alleged that Pour caused Unit 27 to be sold in October 2022 at a below-market sales price.

### 2. Removal of Pour as Trustee

On November 5, 2023, Arie filed a separate petition in probate court seeking to remove Pour as trustee and to surcharge her. This petition alleged that the sale of Unit 27 netted $218,000 in profit and that Pour "did nothing productive with the money." Instead, the petition alleged, Pour used the proceeds for her own benefit, including by withdrawing more than $60,000 in cash and transferring more than $60,000 to her personal bank account.

### C. Guardian Ad Litem Proceedings

On February 28, 2024, the probate court appointed attorney Kevin Kravets as Priel's guardian ad litem. The next day, Arie and Pour stipulated to appoint a professional fiduciary as trustee of the Trust. The court adopted the stipulation as an order.

4

### 1. First Lis Pendens Order

On May 15, 2024, Kravets filed a report with the probate court recommending that the court surcharge Priel "at least $229,838.18 for unexplained distributions from the trust." Based on his review of the Trust accounts, Kravets identified over $66,000 in unaccounted-for cash withdrawals and more than $122,000 in trust assets transferred directly to Pour. Pour had requested, but was denied, a bond to serve as security for her service as trustee. Therefore, as security for the pending surcharge, Kravets requested that the court "authoriz[e] the clouding of title on all real properties currently owned by [Pour]," including three identified properties in Los Angeles County (the Los Angeles properties). Kravets argued this was necessary "to ensure that . . . Pour [was] unable to move such assets outside the reach of potential creditors (i.e. the trustee of the Trust) to satisfy any potential surcharge and to ensure the protection of [Priel] and her estate."

Pour opposed the requests in Kravets's report. She disputed the accuracy of Kravets's accounting and insisted she had used trust assets for legitimate purposes. She also opposed the request to cloud title to her real property, arguing the request was "premature" because it was "based only on [Kravets's] draft accounting."

On May 21, 2024, following an unreported hearing, the probate court entered a minute order that "directed and authorized [Kravets] to record appropriate documentation clouding title on all real properties currently owned by . . . Pour." Pour did not appeal this order.

On June 26, 2024, Kravets recorded lis pendens against two of Pour's Los Angeles properties. On August 6, 2024, Kravets recorded a lis pendens against the third Los Angeles property.

## 2. Withdrawal of Lis Pendens

On May 21, 2024 — the same day the probate court directed and authorized the recording of lis pendens against Pour's properties — Pour advised her attorney in the probate case that she had filed for bankruptcy protection a few months earlier. Pour's attorney notified Kravets of this development.

On August 5, 2024, Pour's bankruptcy attorney emailed Kravets, advising that the lis pendens violated the automatic bankruptcy stay and demanding withdrawal of the lis pendens. Kravets replied that he was amenable to withdrawing the lis pendens and requested additional information about Pour's bankruptcy case.

Following an unreported August 12, 2024 case management conference, the probate court entered a minute order directing Kravets "to submit ex parte request regarding lis pendens if there is a stay on the bankruptcy matter."

A few weeks later, on September 3, 2024, when Kravets still had not withdrawn the lis pendens, Pour filed an ex parte request in the probate court seeking to expunge the lis pendens. Pour argued expungement was warranted both because the automatic bankruptcy stay precluded recording lis pendens in the first place, and because the lis pendens did not relate to a real property claim as required by the lis pendens statutes. Pour requested that the court order Kravets to pay her attorney fees either under the lis pendens statutes (§ 405.38) or as a sanction for bad faith litigation tactics (§ 128.5).

At the unreported September 6, 2024 hearing on Pour's ex parte request, the probate court authorized Kravets to consult with a bankruptcy attorney to determine whether an automatic bankruptcy stay applied.

6

Two weeks later, after undertaking this consultation, Kravets confirmed to the court that a bankruptcy stay was in effect. Accordingly, Kravets requested that the court authorize him to withdraw the lis pendens recorded against the Los Angeles properties.

After an unreported September 24, 2024 hearing, the probate court entered a minute order directing Kravets "to remove all three lis pendens issued." The court denied Pour's request for attorney fees, finding that Kravets was "justified in the actions taken."

### 3. Re-recorded Lis Pendens

On November 19, 2024, Kravets filed an ex parte request for authority to re-record lis pendens against Pour's properties. Kravets explained that the bankruptcy court had dismissed Pour's bankruptcy case on November 10, 2024, which terminated the automatic bankruptcy stay.

Pour opposed Kravets's request, stating she had refiled for bankruptcy protection, which resulted in another automatic stay that precluded recording lis pendens. Pour also argued that lis pendens were "inappropriate" because the probate case did not involve any "claim to [her] real property interest[s]" as required by the lis pendens statutes.

On January 10, 2025, Kravets filed a supplement to his ex parte request, updating the probate court on the status of Pour's bankruptcy. Kravets advised that because Pour had filed for bankruptcy protection four times since 2022, the automatic bankruptcy stay lasted only 30 days and had already expired.

Pour filed a further opposition reiterating her arguments based on the automatic bankruptcy stay and the lack of a claim involving her real property. She explicitly requested that the probate court "make a ruling on

7

the issue of whether no real property claim in the underlying matter prohibits the filing of lis pendens against [Pour]'s properties."

Following an unreported hearing on January 14, 2025, the probate court granted Kravets's request and entered an order that "directed and authorized [him] to re-record appropriate documentation clouding title on all real properties currently owned by [Pour]," including the Los Angeles properties.

On March 14, 2025, Pour appealed the probate court's January 14, 2025 order authorizing the re-recording of lis pendens.

## III. DISCUSSION

Pour contends the probate court erred by directing Kravets to record lis pendens against her properties because the probate case does not involve a real property claim as required by the lis pendens statutes. We conclude the appeal must be dismissed because the challenged order is not appealable. (§ 405.39.)

### A. Lis Pendens Framework

"A lis pendens — also called a notice of pendency of action — is a document filed with a county recorder that provides constructive notice of a pending lawsuit affecting the real property described in the notice." (*Shoker v. Superior Court* (2022) 81 Cal.App.5th 271, 275; see *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 (*Kirkeby*).) "Any party may record a lis pendens when the lawsuit involves a 'real property claim.'" (*Shoker*, at p. 275, quoting § 405.20 ["A party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged."].) Section 405.4 defines a "'[r]eal property claim'" as "the cause or causes of action in a pleading which would, if meritorious, affect . . .

8

title to, or the right to possession of, specific real property." "A lis pendens gives notice that the judgment will be binding on persons later acquiring an interest in that property." (*Shoker*, at p. 275; accord, *Newell v. Superior Court* (2024) 107 Cal.App.5th 728, 734 (*Newell*).) "An attorney of record in an action may sign a notice of pendency of action. Alternatively, a judge of the court in which an action that includes a real property claim is pending may, upon request of a party thereto, approve a notice of pendency of action." (§ 405.21.)

"Section 405.30 allows a property owner to remove an improperly recorded lis pendens by filing a motion to expunge." (*Newell*, *supra*, 107 Cal.App.5th at p. 735.)[2] "There are several statutory bases for expungement of a lis pendens." (*Kirkeby*, *supra*, 33 Cal.4th at p. 647.) As relevant here, a court must expunge a lis pendens "if the court finds that the pleading on which the notice is based does not contain a real property claim." (§ 405.31; see also § 405.32 ["the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim"].)

"Under section 405.39, an order granting or denying a motion to expunge a lis pendens is not an appealable order." (*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 577, fn. omitted; see *Mix v. Superior Court* (2004) 124 Cal.App.4th 987, 996 ["Decisions on motions to expunge lis pendens fall into that class of trial court

_____

2 Section 405.30 states: "At any time after notice of pendency of action has been recorded, any party, or any nonparty with an interest in the real property affected thereby, may apply to the court in which the action is pending to expunge the notice."

9

orders which are expressly *not* appealable"].)[3] Instead, "the exclusive means of obtaining review of an order granting or denying a motion to expunge a lis pendens" (*Rey Sanchez Investments v. Superior Court* (2016) 244 Cal.App.4th 259, 262) is by a petition for writ of mandate "filed and served within 20 days of service of written notice of the [challenged] order" (§ 405.39).

## B. Appealability Principles

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) "A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by . . . section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 (*Jennings*).) " 'A "reviewing court has inherent power . . . to dismiss an appeal which it cannot or should not hear and determine." ' " (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8.)

"The right to appeal is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5; see *In re Henry S.* (2006) 140 Cal.App.4th 248, 255 [because "[t]he right to appeal is purely

---

3    Section 405.39 states in full: "No order or other action of the court under this chapter shall be appealable. Any party aggrieved by an order made on a motion under this chapter may petition the proper reviewing court to review the order by writ of mandate. The petition for writ of mandate shall be filed and served within 20 days of service of written notice of the order by the court or any party. The court which issued the order may, within the initial 20-day period, extend the initial 20-day period for one additional period not to exceed 10 days. A copy of the petition for writ of mandate shall be delivered to the clerk of the court which issued the order with a request that it be placed in the court file."

statutory, . . . parties cannot enlarge or restrict appellate jurisdiction by consent"].) "[S]ection 904.1 lists appealable judgments and orders." (*Ibid.*) Under subdivision (a)(10) of section 904.1, "[a]n appeal . . . may be taken from [¶] . . . [¶] an order made appealable by the Probate Code."

As relevant here, Probate Code section 1300 states: "In all proceedings governed by this code, an appeal may be taken from the making of, or the refusal to make, any of the following orders: [¶] (a) Directing, authorizing, approving, or confirming the sale, lease, encumbrance, grant of an option, purchase, conveyance, or exchange of property. [¶] . . . [¶] (c) Authorizing, instructing, or directing a fiduciary, or approving or confirming the acts of a fiduciary."

**C. Analysis**

A doubt exists here about the appealability of the probate court's January 14, 2025 order, because section 405.39 expressly provides that "[n]o order or other action of the court under [chapter 3 of title 4.5 of part 2 of the Code of Civil Procedure, addressing expungement of lis pendens] shall be appealable." We therefore directed the parties to address the appealability of the order.

Kravets does not contest the order's appealability. Notwithstanding Kravets's position, we must independently satisfy ourselves that the order is appealable. (See *Jennings*, *supra*, 8 Cal.4th at p. 126; *In re Henry S.*, *supra*, 140 Cal.App.4th at p. 255.)

Pour argues the order is appealable under Probate Code section 1300, subdivision (a) because the order "[d]irect[s], authoriz[es], approv[es], or confirm[s] the . . . encumbrance . . . of property"; and under subdivision (c) of that section because it "[a]uthoriz[es], instruct[s], or direct[s] a fiduciary."

11

Assuming without deciding that a lis pendens is an "encumbrance" within the meaning of Probate Code section 1300, subdivision (a), and that a guardian ad litem is "a fiduciary" within the meaning of subdivision (c) of that section, we are not persuaded that — in the context of a proceeding challenging lis pendens — these *general* Probate Code appealability provisions prevail over the more specific lis pendens appealability statue. (See *Edais*, *supra*, 87 Cal.App.5th at p. 542 ["a canon of statutory construction instructs that, where statutes conflict, ' " 'more specific provisions take precedence over more general ones' " ' "].)

To the contrary, we conclude the Probate Code specifies that lis pendens proceedings in probate court matters are subject to the Code of Civil Procedure's lis pendens provisions. Probate Code section 1000, subdivision (a) states the general rule that, unless the Probate Code "provides applicable rules, the rules of practice applicable to civil actions . . . apply to, and constitute the rules of practice in, proceedings under [the Probate Code]." Pour has cited no Probate Code section that provides rules applicable to lis pendens proceedings. Indeed, the Probate Code expressly refers to the Code of Civil Procedure's lis pendens rules. Specifically, Probate Code section 1004 provides: "If a proceeding under this code affects the title to or the right of possession of real property, notice of the pendency of the proceeding may be filed pursuant to Title 4.5 (commencing with Section 405) of Part 2 of the Code of Civil Procedure." Title 4.5 of part 2 of the Code of Civil Procedure includes section 405.39, which specifies that "[n]o order or other action of the court under this chapter shall be appealable."

We acknowledge that section 405.39 refers to orders or actions involving *expungement* of lis pendens and that the challenged order is not, strictly speaking, one involving expungement of a lis pendens. Rather, the

12

challenged order directed Kravets to record a lis pendens. In addition, the authority to obtain court approval to record a lis pendens arises from section 405.21, which is in chapter 2 of title 4.5 of part 2 of the Code of Civil Procedure, not chapter 3, which is where section 405.39's nonappealability provision is located. We are nevertheless unpersuaded that the order is appealable.

The means by which to challenge an improper lis pendens is a motion to expunge it. (See *Newell, supra*, 107 Cal.App.5th at p. 735 ["Section 405.30 allows a property owner to remove an improperly recorded lis pendens by filing a motion to expunge."]; *Shah v. McMahon* (2007) 148 Cal.App.4th 526, 529 ["the lis pendens procedure provides a means by which a court may dispose of meritless real estate claims at the preliminary stage of a case, and an appellate court may review that order by way of a petition for writ of mandate"].) Therefore, if Pour believed the lis pendens was improper, she should have moved in the probate court to expunge it. The probate court's ruling on that motion would not have been appealable. (§ 405.39.) Pour cannot manufacture appellate jurisdiction by failing to take a necessary step in the probate court that would unquestionably have resulted in a nonappealable order. (See, e.g., *Spellens v. Spellens* (1957) 49 Cal.2d 210, 228 [" '[W]hen a judgment or order is not appealable, it cannot be made reviewable by the device of moving to set it aside and appealing from an order denying the motion. This proposition stems from the rule that forbids a party to do indirectly what he may not do directly.' "].)

Indeed, to allow otherwise would lead to an anomalous result. (See *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 187 ["We must, of course, interpret statutes to avoid anomalous or absurd results that the Legislature could not have intended

13

and that would frustrate the Legislature's intent."].)  The Probate Code specifies that lis pendens recorded in connection with probate matters are governed by the Code of Civil Procedure.  The Code of Civil Procedure sets forth a generally applicable expedited writ review process for challenging lis pendens.  Yet, using Pour's approach, that procedure inexplicably would not apply to challenges stemming from lis pendens recorded in connection with probate court proceedings.  We doubt the Legislature intended this inconsistent result.

Additionally, looking not at the form of the challenged order but at the nature of its legal effect, we conclude the order is nonappealable under section 405.39.  (See *Estate of Martin* (1999) 72 Cal.App.4th 1438, 1442 ["the appealability of an order of the probate court is determined not from its form, but from its legal effect"].)  Pour opposed Kravets's request for authority to record lis pendens on the basis that the petitions in the probate case did not allege a real property claim.  This is the basis on which she would have moved to expunge the lis pendens.  (§§ 405.31 [the court must expunge a lis pendens if the "pleading . . . does not contain a real property claim"], 405.32 [the court must expunge a lis pendens if the "claimant has not established by a preponderance of the evidence the probable validity of the real property claim"].)  Indeed, in this appeal, Pour expressly argues that "the lis pendens should be expunged and attorney's fees and costs awarded pursuant to . . . section 405.31."

We therefore conclude that the challenged order is nonappealable under section 405.39.

Even if we were to exercise our discretion to treat Pour's notice of appeal as a petition for writ of mandate (see *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 745), we would deny the petition as untimely.

14

Under section 405.39, a petition for writ of mandate challenging an order or other action on a lis pendens must be "filed and served within 20 days of service of written notice of the order." This 20-day period can be extended by "one additional period not to exceed 10 days," thus establishing an outside filing deadline of 30 days following notice of the challenged order. Pour did not file her notice of appeal challenging the January 14, 2025 order until March 14, 2025 — nearly 60 days later and about 30 days beyond the statutory deadline. Therefore, even if treated as a writ petition, it would be untimely.

Accordingly, we will dismiss the appeal.

## IV.  DISPOSITION

The appeal is dismissed. The parties shall bear their own costs on appeal.


RUBIN, J.

WE CONCUR:


DO, Acting P. J.


CASTILLO, J.

15